NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1096

ALFONSO LONGOBARDI

vs.

GULFSTREAM AEROSPACE CORPORATION.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This appeal asks us to decide whether an arbitration agreement is enforceable.  The plaintiff was an employee of the defendant corporation.  When he started at the job, the plaintiff signed an acknowledgement form, agreeing to comply with a dispute resolution policy (DRP) that was hyperlinked in the form.  When the plaintiff later sued, a judge allowed the defendant's motion to compel arbitration based on the DRP.[1]  The plaintiff maintains that the agreement to arbitrate was not

_____

[1] The terms of the DRP provided a four-step procedure for dispute resolution, from human resources review to arbitration. The policy stated that the defendant "may elect to bypass one or more steps prior to arbitration."  The DRP also provided, "[t]his Policy is an agreement to arbitrate pursuant to the Federal Arbitration Act."

enforceable because (1) the hyperlinked DRP did not provide reasonable notice of its terms and (2) his interaction with the form did not reasonably manifest his assent to the terms of the DRP.  We affirm.

Background.  The defendant hired the plaintiff in February 2018.  During the plaintiff's onboarding process, he was informed about the DRP four times:  (1) in the online job application; (2) in an electronic "New Hire Policy Acknowledgement Form" (acknowledgement form); (3) during a PowerPoint presentation at the orientation; and (4) in an "Employee Orientation Statement" presented at the end of the orientation.[2]

Before beginning his employment, the plaintiff completed all required forms and participated in the mandatory onboarding program.  We focus on the acknowledgment form, which the plaintiff was required to review and sign electronically.  At its top, the acknowledgement form stated, "[b]y selecting the check box of each policy I acknowledge that I have read the

_____

[2] The job application included an agreement to resolve all claims through the DRP and "waive any rights to a jury trial." The PowerPoint presentation included a slide that outlined the four-step DRP procedure.  See note 1, supra.  The employee orientation statement required the plaintiff to acknowledge that the DRP was reviewed with him during orientation.  While each of these three documents referred to the existence of the DRP, they did not set forth the full policy or provide a means of accessing it.  Only the acknowledgement form provided access to the DRP itself.

policy and understand how this policy affects me and understand the guidelines and requirements of each."  What followed were eight policies, listed by name and policy number, including the DRP ("Policy CP-6-56:  Dispute Resolution").  Each policy name had a checkbox to its left.  The policies appeared in blue underlined text, consistent with a hyperlink to a separate document.  The other policies related to employment terms such as business conduct and ethics, workplace attire, use of computing systems, time reporting, combatting human trafficking, and harassment prevention.  There was no time limit for the plaintiff to review the policies and sign the acknowledgement form.

To complete and submit the form, the plaintiff had to check the box next to each policy including the hyperlinked DRP.  Only after checking each box could the plaintiff go on to the "electronic signature" section.  That section provided:

> "I acknowledge that I have reviewed and understand the documents listed above.  Further I understand that, as an employee of Gulfstream, I am expected to comply fully with the policies set forth and any acknowledgement[s] I have made are true and accurate to the best of my knowledge."

Below this acknowledgement language was a line for "employee name" and another line for "electronic signature."  Beside the signature block was a line for the date and a check box next to the words "I agree."  Underneath the signature block, there were

3

instructions for submitting the form electronically, along with the explanation, "[t]his is your electronic signature."  The form then read, "[b]y electronically signing this form, you agree to all the terms contained herein."  Without reviewing the DRP, the plaintiff checked each box, input his name, and affixed his electronic signature on March 20, 2018.

Discussion.  "[W]e review the court's decision to compel arbitration de novo."  Commonwealth v. Philip Morris Inc., 448 Mass. 836, 844 (2007).  "[W]hether parties have agreed to arbitrate their disputes is governed by ordinary State law contract principles."  Good v. Uber Techs., Inc., 494 Mass. 116, 126 (2024).  "[T]he fundamentals of online contract formation should not be different from ordinary contract formation."  Kauders v. Uber Techs., Inc., 486 Mass. 557, 571 (2021).  "[F]or there to be an enforceable contract, there must be both reasonable notice of the terms and a reasonable manifestation of assent to those terms."  Id. at 572.  "Reasonable notice of a contract's terms exists even if the party did not actually view the agreement, so long as the party had an adequate opportunity to do so."  Archer v. Grubhub, Inc., 490 Mass. 352, 361 (2022).

"Where the offeree has actual notice of the terms, [the notice] prong is satisfied without further inquiry" (alteration omitted).  Good, 494 Mass. at 127, quoting Kauders, 486 Mass. at 572.  "Actual notice will exist where the [party] has reviewed

4

the terms." Archer, 490 Mass. at 361, quoting Kauders, supra. "It will also generally be found where the user must somehow interact with the terms before agreeing to them." Kauders, supra. Absent actual notice, a court examines the totality of the circumstances to determine whether there was reasonable notice of the contract terms. Id. at 573.

1. Actual notice. The defendant maintains that the plaintiff had actual notice because he clicked the box to the left of the linked dispute resolution policy, thus acknowledging that he read and understood the policy. But "[c]hecking a box next to the statement that [the plaintiff] reviewed the terms is not equivalent to an admission . . . that he, in fact, reviewed the terms . . ., or even scrolled through them." Good, 494 Mass. at 127.

The acknowledgement form was not a "scrollwrap" agreement that required the plaintiff to open or scroll through the terms of the policy before checking the acknowledgement box next to it. See Good, 494 Mass. at 136 n.30. Further, as discussed, even though the plaintiff checked the box acknowledging he "read the policy and underst[oo]d how the policy affect[ed him]," including its "guidelines and requirements," he contends that he did not in fact review the policy.

"[I]n the absence of record evidence that [the plaintiff] accessed the terms . . . through the hyperlink or 'somehow

5

interact[ed] with the terms before agreeing to them,' [the defendant] has not met its burden to show actual notice." Good, 494 Mass. at 128, quoting Kauders, 486 Mass. at 572. "Where, as here, there is a dispute whether the [plaintiff] actually reviewed the agreement, a court must evaluate 'the totality of the circumstances . . . [to] determin[e] whether reasonable notice has been given.'" Archer, 490 Mass. at 361, quoting Kauders, supra at 573.

2. Reasonable notice. To examine the totality of the circumstances, we consider the nature, including the size, of the transaction; the interface by which the terms were communicated; the form of the contract; and whether the notice conveyed the full scope of the terms and conditions. Kauders, 486 Mass. at 573. See Good, 494 Mass. at 128. "Ultimately, the offeror must reasonably notify the user that there are terms to which the user will be bound and give the user the opportunity to review those terms." Id., quoting Kauders, supra.

a. Nature of the transaction. "The nature of the transaction is viewed from the perspective of 'reasonable people in the position of the parties.'" Good, 494 Mass. at 128-129, quoting Meyer v. Uber Techs., Inc., 868 F.3d 66, 77 (2d. Cir. 2017). The "sufficiency of the notice turns on whether, under the totality of the circumstances, the employer's communication would have provided a reasonably prudent employee notice of the

6

waiver [of the right to proceed in a judicial forum]." Archer, 490 Mass. at 362, quoting Bekele v. Lyft, Inc., 199 F. Supp. 3d 284, 295-296 (D. Mass. 2016). "The full context of any transaction is critical to determining whether any particular notice is sufficient to put a consumer on . . . notice of contractual terms contained on a separate, hyperlinked page." Good, supra at 128, quoting Sellers v. JustAnswer LLC, 73 Cal. App. 5th 444, 453 (2021).

This case involves starting a new job, not hiring a rideshare car. We trust that the difference in the stakes is clear. The plaintiff repeatedly encountered the DRP throughout the defendant's onboarding process, supporting that there was reasonable notice under this factor. The job application notified the plaintiff that he would be bound by the terms of the DRP and that he was waiving the right to a jury trial. The acknowledgement form provided the dispute resolution policy by name and number through a hyperlink. By signing the form and clicking "I agree," the plaintiff indicated he understood that he would be bound to comply with the policies and "to all the terms contained herein."

The employer also reviewed the DRP and procedure, including arbitration, in an orientation presentation. The plaintiff was instructed "on how to access the DRP on the company's intranet." Taken together, this was enough to put a reasonable person on

notice that he was agreeing to the DRP as a term of his employment. See Archer, 490 Mass. at 362 (employees had reasonable notice of arbitration agreement where "[they] were required to provide their electronic signature . . . acknowledging that [they] ha[d] read, underst[ood], and/or agree[d] to be bound by the terms of any content or document(s)," and were "informed that they were signing an arbitration agreement"). See also Kauders, 486 Mass. at 577 (contrasting cases enforcing electronic arbitration agreements for Uber drivers with unenforceable notice provided to users).

b. Interface and form of the contract. "In examining the interface, we evaluate the clarity and simplicity of the communication of the terms." Kauders, 486 Mass at 573. We assess whether "the interface require[d] the user to open the terms or ma[de] them readily available," as well as "[h]ow many steps must be taken to access the terms and conditions, and how clear and extensive is the process to access the terms." Id. "[A] common method of conspicuously informing users of the existence and location of terms and conditions" is "requiring users to click a box stating that they agree to a set of terms, often provided by a hyperlink, before continuing to the next screen." Id. at 575, quoting Cullinane v. Uber Techs., Inc., 893 F.3d 53, 62 (1st Cir. 2018). "These are often referred to

8

as 'clickwrap' agreements, and they are regularly enforced."
Kauders, supra at 574.

Here, the plaintiff was not required to open the policy before checking the box acknowledging he had read it; and the link to the DRP, by which employees were asked to forgo a valuable right, appeared in a list that included seven other policies. See Cullinane, 893 F.3d at 64 ("If everything on the screen is written with conspicuous features, then nothing is conspicuous"). These factors weigh in favor of the plaintiff's position, but they do not require reversal. We are mindful that, in Good, 494 Mass. at 132, the Supreme Judicial Court ruled an interface adequate when

> "[t]he interface both 'encourage[d]' the user to review the terms of use and provided a hyperlink labeled 'Terms of Use.' And it stated, 'By checking the box, I have reviewed and agree to the Terms of Use . . .' Requiring a user to expressly and affirmatively assent to the terms, such as by indicating 'I Agree' or its equivalent, . . . puts the user on notice that the user is entering into a contractual arrangement." (Citations omitted).

See Kauders, 486 Mass. at 577. So it was here: the plaintiff was not only "encouraged" to review the terms but could not advance to the next stage of his onboarding process without checking the box next to the DRP, rendering his electronic signature at the bottom of the page, and checking a separate box that stated, "I agree." The terms of the DRP were readily available through the hyperlink; reading the policy required

9

only that one click on the link.  See Good, supra at 133 (interface "clearly conveyed that the terms were readily available through a hyperlink, which was underlined, written in blue text, and placed in the center of the screen").  There was no time limit to complete the review.

While an interface that provided terms in a "scrollwrap" format might be the best practice, "[w]e do not require, for purposes of reasonable notice, that the user actually scroll through the terms."  Good, 494 Mass. at 136.  Cf. Emmanuel v. Handy Techs., Inc., 992 F.3d 1, 9 (1st Cir. 2021) ("we do not read [Kauders] impliedly to suggest that a user must be required to scroll through the full text of an agreement prior to manifesting assent").

c.  Full scope of terms.  We also consider whether the defendant's "notice convey[ed] the full scope of the terms and conditions."  Kauders, 486 Mass at 573.  "[R]easonable notice does not demand that the offeror highlight particular provisions of the terms of use where, as here, the interface provides a readily identifiable hyperlink to all of the terms, none of which was buried in fine print."  Good, 494 Mass. at 140.  In making this assessment, we are mindful of context -- here, beginning an employer-employee relationship.  See Kauders, supra at 575 (comparing signing up for ride-sharing service to "the purchase or lease of an apartment or a car, where the size of

the personal transaction provides some notice of the contractual nature of the transaction even to unsophisticated contracting parties").

We described above how the DRP was situated in the onboarding process. The DRP had "dispute resolution" in the name; the first page stated that the company used arbitration in its dispute resolution process and "may elect to bypass one or more steps prior to arbitration." "[O]fferees have a duty to read the terms of a contract to which they assent and are not excused from a contract's terms solely by virtue of having chosen not to do so." Good, 494 Mass. at 141.

In these circumstances, we conclude that the plaintiff was on reasonable notice of the terms of the DRP by completing the acknowledgement form.

3. Reasonable manifestation of assent. "When considering whether the user assented to the terms of the online agreement, we consider the specific actions required to manifest assent." Kauders, 486 Mass. at 573-574. "The connection between the action [that manifests assent] and the terms [should be] direct [and] unambiguous." Good, 494 Mass. at 142, quoting Kauders, supra at 580. "A user may be required to expressly and affirmatively manifest assent to an online agreement by clicking or checking a box that states that the user agrees to the terms and conditions." Kauders, supra at 574.

11

"Requiring an expressly affirmative act, . . . such as clicking a button that states 'I Agree,' can help alert users to the significance of their actions.  Where they so act, they have reasonably manifested their assent."  Kauders, 486 Mass. at 575. "So long as the party is required to make some indication of assent, such as selecting 'I agree' or 'I accept,' the fact that the party chooses not to read the agreement does not render it unenforceable."  Archer, 490 Mass. at 362.

The plaintiff took three separate actions to complete the acknowledgement form and manifest his assent to the terms of the DRP:  he checked a box certifying that he read the DRP and understood its implications; signed the acknowledgement form to certify that he understood the expectation to comply with the policies; and checked an "I agree" box beside the signature block, stating he "agree[d] to all the terms contained herein." The plaintiff's interactions with the acknowledgement form reasonably manifested his assent to the policies within the form, including the DRP.  It follows that there was no error by the Superior Court judges who entered orders compelling arbitration and confirming the award, and no error in the entry of judgment consistent with the award.

Judgment affirmed.

12

By the Court (Meade,
Hershfang & Toone, JJ.[3]),

Clerk

Entered:  October 30, 2024.

---

[3] The panelists are listed in order of seniority.

13